all right we specially scheduled this case free speech coalition and we will hear argument mr. Murray please the court my name is Michael Murray I do represent the appellants and I would like to reserve four minutes of my time for rebuttal that's granted yours I respectfully submit that the evidence that was amassed in the court below demonstrates the 2257 and a and the implementing regulations failed the narrow tailoring test of intermediate scrutiny particularly when analyzed under the formulation of that test set forth in the Supreme Court's most recent decision in McClellan versus Coakley let me start with the adult film industry how about also since you've just cited explaining to us the the relevancy that that recent Supreme Court decision can have given the very very different nature of speech well it involved different nature of speech but it was under intermediate scrutiny and the intermediate scrutiny test is applicable you're talking about the tailoring discussion yes in any kind of a content-neutral statute that is subjected intermediate scrutiny the test is the same and narrow tailoring has to be achieved by that statute and the Supreme Court teaches us a lot in the McClellan versus Coakley case about what narrow tailoring means and that it has teeth intermediate scrutiny does have teeth and much of the discussion in the Supreme Court's decision in that case is fully I think applicable to this case let me start with the adult film industry is there a category judge Baleson said that there was not a category of sorts that that was limited to the adult to those who pervade or produce simply adult sexual and explicit images is that correct I'm not sure that there wasn't a category there was not a separate commercial category that limited itself just to adult sexually explicit images is that correct well I'm again I'm not sure can we categorize there were a disparate group of plaintiffs there's no question about it some of them were involved in the adult film industry some were photographers some free speech coalition doesn't represent the adult film industry it's the trade association for the adult entertainment industry which includes the producers it includes the retailers and you represent individual members some of whom are individual plaintiffs in this yes in addition to the trade association itself there's Marie Levine is an adult filmmaker and producer and actress the educational films of Sinclair Institute would be representative of some of the adult entertainment industry but one of the things that was I think important is the evidence was unrebutted that whatever you call that industry the adult film industry has always checked and recorded IDs of its performers long before 2257 was born the reason I ask you about the industry itself and whether free speech coalition represents them we're talking about individual plaintiffs here right and to the extent that you're asking us to apply this kind of narrow tailoring to these as applied challenges don't we have to look to each individual member and what's at stake for each of each of them I think that's one of the things that this court needs to do yes and but that includes the evidence from Jeff Douglas for example who was the chairman of the free speech coalition and described the efforts that the adult entertainment industry went to to make sure that no minors appeared in their films and that they abhorred child pornography and that indeed over the last 30 years there's been only a handful of instances in which any minor has jumped through the cracks one piece of evidence yes mr. Murray and and as I went back over both your position and the position of the government I'm not suggesting either of you were myopic but it seemed to me that there was a highly aggregative approach that both sides took here to all of the evidence that was presented during the eight day trial before judge Baleson and in the end what we what we have is a balancing test right don't we really have a balancing test that that that both of you are urging upon us well we there are three issues here there's obviously the as applied narrow tailoring there's the overbreath issue which depends we know we know what the issues are you can be helpful to me mr. Murray by answering my questions because indeed we do have to be highly analytical in the way we look at the as applied challenges of the individual plaintiffs and how we look at the facial approach and how the level of scrutiny plays into to all of this and so I'm I'm trying to determine here whether rather than then apply a balancing test it seems to be to be from both of you a kind of numerical or quantitative sort of comparison if if what we're doing is really something more than that because there's you can't just do what is almost a preponderance of the evidence approach because of the presence of this governmental interest that's that's involved well I think part of the reason that the evidence was put on that way was because one of the your first opinion was that we needed to compare the amount of images by obvious adults compared to those on an individual record and we have a record that establishes that a very high majority of the images of each of the individual plaintiffs who are parties here are of persons who are far above twenty six or thirty or even forty years old and who are obviously adults and as to whom you don't need to have this extensive burdensome record to get back to this point we need to compare the amount on one side of the scale that is where the does not implicate the government's interest and you would argue that as compared to the amount that implicates the government's interest and whether you call it a balancing or comparison where in the record do we have some demonstration that the amount of constitutionally protected speech that doesn't implicate the government's interest predominates well even their own expert Gail Dines admitted on cross-examination that her examination of the entire internet and the sexually explicit images that are contained on the internet only one-third of it involves images of adults who could possibly be confused as minors because of their youthful appearance and therefore two-thirds of the massive quantity of the universe of sexually explicit material of adults is of people who are obvious adults that's a comparison one-third which is potentially one-third not substantial well not compared to two-thirds two-thirds when the question is certainly is more than one-third of my question went to substantiality yes but but you but then it goes back to the comparison because the question also said or was it she that talked about teen porn yes that's and but I think some of that's one-half of the of the images I mean I think the one-third was at least that was the smallest but then you get to one-half you have you know quite a number there well I don't like her testimony was that the teen porn and all of its ally terms not just teen porn but all of its ally turns represented 28 to 34 percent of the universe of sexually explicit images on the internet but you're at your expert really focused on sexting among young people that really doesn't help your case does it well they were young adults it just so that's exactly the problem isn't it that they're young enough white one of my problems again with the numerical approach that is so heavily argued here is why age 25 I mean I think I know what you pick age 25 because you you want to pick an age that will allow you to increase the number favorable to your position why not age 35 well because they're expert for example dr. Biro admitted that the age range where there might be likely confusion as to whether someone is a minor or an adult is the ages 15 to 24 and he nonetheless testified that there is still a possibility especially among those who do not have the requisite expertise in this area to make mistakes with respect to someone 25 vis-a-vis someone who is say 18 right he acknowledged sure there are some some there is some margin for error he said but again the question then becomes are these burdensome and extensive record-keeping requirements justified as narrowly tailored when by everyone's admission they primarily apply to adults who could not be confused as minors and that the vast majority even if you can see the one-third you're still talking about two-thirds of the universe of images that are burdened unnecessarily under that comparative analysis I'm trying to figure out though just what the burden is we are talking first of all about a record-keeping requirement not the suppression of speech right well some of the speech was was indeed we have in this record two examples of that right well we have more than two examples in this record yes we've got a doctor of Steinberg could not publish Cupido from Norway because they don't keep records there Betty Dotson had to take that was more a fear of not knowing that the timing was it no the two we have here is that the general gallery yes that was a grass and the fire island that was a but they were suppressed but yet those seem to be what the statute was aimed at where you can't tell the age I mean one of them was wanted to be anonymous well you want to be anonymous then you either comply with the statute or you are chilled because you wanted to be anonymous and the other one with the impossible identification issue those are the those are the two record issues of being chilled is that not well Carol Queen testified that she does collage art that involves accumulating images from various sources and putting them in an artistic way on a poster and publishing those and she can't do that because the problem with these examples of what's being chilled it would be one thing if you had you know clearly 50 year old 40 year old 30 year old you know that were were chilled but you have issues you have instances that are pretty much what the statute is aimed at where you can't tell the age is that not correct there if you concede that the legitimate interest of the statute is to prevent people from inadvertently using someone under the age of 18 what other purpose would it have the only legitimate purpose is to prevent child this record-keeping requirement is not just checking IDs it would be one thing if Congress passed a law that said that producers of commercial sexually explicit material must check an ID and keep a copy of it but that's not what the statute does it goes so far beyond that it requires this extensive record-keeping cross-indexing it requires that the secondary producers have to collect it from the primary producers it requires the retailers and the wholesalers have to make sure that the label is exactly right and perfection is the minimum one misstep is a felony punishable by five years in prison. What is so burdensome about what you have just described and what does the record show about the cost of it and I realize the economics of it is a very minor factor here but it's nevertheless a factor and you'd be arguing it as a burden. Why is what you have described in the way of record-keeping and labeling such a burden especially with respect to those in age cohorts that you maintain could not be mistaken because we are dealing with a record-keeping regime that is required anyway right so the only thing that these producers are required to do is maintain additional record-keeping and labeling we're talking about an increment for those age cohorts over and above what the statute already requires. Millions of Americans then under that regime who do sext who do post on social networking sites who do send emails to each other with explicit attachments have to put their home addresses on all those images and since they don't maintain normal business hours at their home they've got to send a letter to the Justice Department identifying the 20 hours per week that they're going to be available for the FBI to come in and inspect their records. Are you saying they all have the prohibited sexual images? Are you assuming that that they have they can they show actual sexually explicit conduct as defined in the statute? Or at least lascivious exhibition of the genitals. You don't even have to have nudity. A clothed genital can be lascivious exhibition. And plain old nudity could be not, correct? True, but any erotic pose of a fully nude man or woman that includes the genitals is  the risk of being covered by this statute. I'd like to ask you about the administrative search issue. Yes. And could you give us your position on that? Clearly. Why isn't it a pervasively regulated industry? Because there are no pervasive, first of all it's not an industry that is defined at all because it applies to every single American. A photographer, a husband, a wife, a employee who conveys a sexually explicit image is captured by the statute. It doesn't, it's not a commercial limitation on it as you held in the first case. So there are no pervasive, the only pervasive regulation that the district court relied upon was the child pornography statutes. But those have no application to any of these plaintiffs because they don't use children in their films. They abhor that. That's a general law that applies to every American. What does a warrant do for your clients here? It strikes me that in the kind of regime permitted by the regulation, especially if there's advance notice given, it may actually be a more congenial type of approach, if I can imagine what your clients would face if they were subject to a warrant. Except that their Fourth Amendment rights are violated by a warrantless search and seizure and inspection without probable cause. All that does is put in other words what my question was. I mean, that's the obvious. I understand that. I was speaking more in practical terms. Well, in practical terms, as I said, for example, many of these photographers are one man or one woman operation. They've got to now stay by their records at least 20 hours a week. They've got to send the government a notice. Which 20 hours a week? They have to be poised at all times to receive the FBI. Thank you. That's one of the problems with the inspection requirement. But it's not a perv... Getting back to Judge Farika's question, there is no... The other thing is the First Amendment prevents constitutionally protected speech from being pervasively regulated. By definition, the government cannot pervasively regulate constitutionally protected speech. So this can't be an industry that is pervasively regulated. Well, you're talking about the entire pornography industry. We're talking about child pornography here. But, Your Honor, there is no child pornography being disseminated by the child pornographers. There's only been nine prosecutions between 2002 and 2012 under 2257. Four thousand child pornography prosecutions. All of them virtually successful. And what's interesting is that in virtually none of them did the government add counts for the child pornographers not complying with 2257. The only people that are actually burdened by the statute are the legitimate citizens who are disseminating constitutionally protected expression. Millions of Americans. I see my time is up. All right. We'll hear from you on rebuttal. You reserve four minutes. Thank you. May it please the Court. I'm Anne Murphy for the Attorney General. Your Honor, I think it's important to point out what the individual as-applied claims are and who they relate to. For example, I think you're right, Your Honor, that there is no as-applied challenge brought by the adult entertainment industry. There are some separate claims that are brought by  commercial producers of certain forms of sexually explicit images. And then there's a facial challenge to, you know, based on the over-breath doctrine. And I think my primary response, Your Honor, is that the district court did not at all make this a numbers game. The district court looked at the record, looked at the evidence, and basically really determined that the decisions of the Sixth Circuit and the D.C. Circuit had been correct. And I would assume that your position is it's not a numbers game. That's exactly right. So, at least as to the as-applied challenge, does this really come down to how does the requirement advance the government's interest in combating child pornography when we're talking about a records-keeping regime that includes a significant number of obviously mature adults? I mean, that's a major, if not the major, that is a major question that's at stake here. It is a question. A legitimate question for the plaintiffs to be asking this question. That's right. But as the district court observed, what we're talking about is the application to specific producers. And the court observed that with respect to each producer, there is no producer who does not use young models. None in the industry. There was no evidence of any individual plaintiffs who didn't use young models. And on the other hand, there were many, many producers who focused on images of the very, very young or people purporting to be very young. So, should the statute have focused on just on those who use models under the age of 25 or under the age of 30? No, Your Honor, because part of the point about it being focused on the producer is, let's say the statute's invalidated on a numbers basis as applied to a particular producer. We don't know what the next producer is going to do. We don't know if Barbara Nicky's next project isn't going to be, you know, the Because all of them are using young performers and because for a broad range of them, it's not possible to tell how old the people are shown in the images. And the evidence was very clear that for numerous, I mean, I'm sure Your Honor's are somewhat familiar with the record, that there are numerous images in there, which are mainly pictures of body parts. And Dr. Bera, the government's expert, testified that he, as an expert, couldn't tell how old those people were. And the district court's point was that the government has a serious interest, and I think based on the record, we can all agree, a compelling interest in making sure that the people shown in those images are at least 18 years old. I would like to just make sure that Your Honors have seen some of the particularly young, the producers who seem to show images of particularly young people at pages 5031 and 5025 of the record. And then there's a producer called First Time Video, which focuses on the very young people. And the district court said that protecting, that ensuring that those people are of age was sufficient to require age verification and record keeping from the remainder of the people. Even if, you know, on the numbers game, it looked as though that wasn't going to be true. All right. But let me try to return to the point of my previous question to you. And that is, I mean, obviously you would agree as a matter of simple biological truth that there is some age at which there's not going to be any confusion as to whether someone is a minor. I think it may actually depend what's being shown in the image. Fair enough. I mean, Dr. Bira, when he was shown images that showed only body parts, he said that he didn't have enough visual cues to determine the age. That's at pages 5483 to 84. So, I mean, if he can't do it, I don't think any of us can. And I'm sure if you look through the evidentiary record, you'll be aware that there are numerous images of that type. And so I think the district court correctly did back away from the numbers game and just say, if you're using younger performers, there's going to be a risk. The government has a compelling interest in avoiding that risk. And the incidental obligations of keeping the records don't unduly burden speech. Isn't there a problem, and maybe it's a modern day problem. I mean, this statute is a couple of decades old. We have instances now, whether you call it revenge porn. I mean, there is a proliferation of images that are being made public. Right. And without, you know, the need for experts or witnesses, almost take judicial notice or practical notice of the fact that there is a proliferation of this. And have sexually explicit. Isn't this a problem that every person who is engaged in this activity, and my law clerks tell me a lot of people are engaged in this activity, are going to be criminally, you know, are going to commit felonies. Because they haven't tagged, they haven't this, they haven't done all these things, they haven't cross checked. I mean, it's a different era from, you know. Years ago when you had a Kodak and you went and you had your film developed and you could take X many pictures and, you know, as a practical matter, you didn't take 4,000 pictures because it cost you money. Now it doesn't cost you a thing. I mean, don't we really have a problem today, though, with this law? It's potentially a problem, Your Honor, but it's It's supposed to be conceivable. The second part of the test, conceivable. Inconceivably infamous. So we're talking on the overbreadth. Yes. It's really important to note in this case that the district court did not out and out hold, the statutes are not overbroad, there are no, what the court held was Yeah, but we're reviewing it. No, that's correct. I understand that. But it's, it's important to note that the court held that the plaintiffs had failed to show These plaintiffs, these plaintiffs, as to the as applied Absolutely. And I'm not ruling out the possibility that could be a future. No, but that given the opportunity to produce evidence of how many images, because as the district court correctly determined, you know, we can imagine Well, let's back up, let's back up. All the text, the facial or the overbreadth and go to the facial, you know, whether it's facially valid. That is the overbreadth challenge, correct? Oh, yes. I'm sorry. But if we look at just the sheer, the sheer number, if we're talking about, um, the amount, if you will, should we not understand that the amount of, uh, unconstitutional applications, if you will, predominate here? No, because Your Honor, we, we don't know how much of that is subject to the statute. And if you look at all that, that the reports of, you know, sexting and, but that could mean all kinds of different things to different people. Like some of them apparently would like text sexts or, you know, people not very wearing very many clothes or kissing or whatever. And the district court said, if I'm going to strike down a federal statute where the evidence before me shows that there are a vast number of And it's not burdensome for the main core of its purpose, which is the adult entertainment industry. This is not enough evidence. And that's what the Sixth Circuit said in connection. Correct. So with a different set of plaintiffs, uh, all the plaintiffs here were admitted that they were commercial producers, at least to some extent, and will be in the future. But with a different set of plaintiffs, perhaps these, the arguments that are being made in this particular case might prevail on overgrowth. Well, it would be a different record that we would be working on, but yes, I mean, it was striking that there was not evidence in the record of one single, you know, some of the hypotheticals that are constitutionally troubling, the husband and wife in their basement, you know, these kinds of things. The record was absolutely devoid of it. And the district court just concluded that without that we're not going to strike down a federal statute. But Mr. Murray will say on rebuttal, he has said in his briefing, uh, why would you put other plaintiffs to the expense and aggravation of having to do that? There is inherently that kind, uh, some kind of expense and difficulty in being required to bring those as applied challenges by the right plaintiffs, if you will. That's correct. But there's also value in the federal statute. I mean, to strike down the federal statute, plaintiffs need to create the correct record for doing it. And they have the opportunity to do that. Well, they have the burden, right? And what is that burden here in terms of Why isn't it, let me ask it this way. Would you contend that what they have shown was insubstantial in terms of the reach here? Yes, Your Honor, because they didn't, okay, so there were the two separate types of possibly unconstitutional applications. I'm setting aside for now our point that really all burdens further the government's purpose. Um, but there were the two separate types of, of areas of possible constitutional concern. With respect to the older people, um, I completely disagree with Mr. Murray that, that the record shows that, you know, that 60% of it show clearly mature adults. That's not what the district court found. Um, Dr. Dines testified that 30% of it was teen porn. And that's not just people under 25. That's people who are made up to look basically like little girls. So that's 30%. That's a huge amount. Over and above that, Dr. Dines testified that the models were predominantly young looking and that they would use, you know, cosmetic surgery and these kinds of things that made it particularly difficult to tell their age. And the district court's finding was that younger models are ubiquitous. So even in these kind of unusual genres such as the MILF porn and the granny porn, the people in those images weren't even like all clearly mature. It was mixed up with much younger looking people. And in fact, the age difference seemed to be relevant. Um, so that's that side of it. The other side of it was, we've touched on a little bit, was the potential application to purely private parties. And there was just a dearth of evidence on that point as to how much, if any, the court said was really subject to the statute or whether when people report that they're sexting and whether what they're really doing is, you know, not subject to the statute here. You wouldn't really urge upon us, would you, the position that the government doesn't intend to prosecute here? So there's not really a... No, Your Honor. Stephen's pretty well sealed that for you as a that-dog-won't-hunt argument. I think Your Honor's explained to us the last time we visited here that that was not going to be a viable argument. I have difficulty with the administrative search exception being applied here and also difficulty with the district court just kind of doing an end-run and imposing, if you will, an in-advance, notice-in-advance requirement to kind of to save this search aspect. I have problems with this as being a warrantless search and some of it, in fact, it couldn't be the administrative search exception because some of these searches were in homes and the administrative search is clearly intended for commercial. So how do you save this warrantless search? Well, Your Honor, I think that this, first of all, our primary argument is that one of our arguments here is that there isn't even standing to raise this claim because there's no imminent possibility that there will be another search. But to answer your question directly, I think that the district court was struck by the fact that this is unlike the ordinary administrative search where there will be a regulated industry and the officers will come in and they can search the whole place. Yes, it's unlike the normal and, therefore, it doesn't fit within the administrative search exception. But I think the district court was looking at the administrative search exception as an exception to the warrantless requirement and that what was required was reasonable action by the government. And what the court concluded was that because all that was going to be inspected were the records, which is, and it hadn't But you are going on to someone's premises. You are going into a home or a business, and that is a search. You are not, you know, have your eyes closed and you come to the box or the drawer. It's a search. That is true, Your Honor, but this is one of the reasons why we don't believe the standing because the evidence before the court also showed that increasingly the records were being kept electronically and that, in fact, it was not necessary under the regulations that there be any intrusion onto private property. But I'm saying that the statutory provision is, sets forth a search that violates the Fourth Amendment, does it not? Actually, the statutory provision just says that the Attorney General should be able to search at any reasonable times, to inspect the records at all reasonable times. So the extent that Your Honor is struggling with the scheme, I suspect that you are struggling with the regulations. It does not work against your standing argument, though. Because? Because the Attorney General has unbridled discretion to go ahead and conduct an administrative search whenever he wants. Except that Your Honor is reminded so that we can get a sense of what these searches would look like and what we've got a sense was of what they looked like earlier, which was very limited, the producers would produce the records. And I think part of what we're saying here is that it seems really quite likely that the regulations would have to be redone and that in a future inspection program that just has happened on one occasion, even under the old regime, you could just, the FBI could just ask people to e-mail in their records or send their records on disk. That's not what the regulation and the statute provide. It's not what the regulations provide. And they provide someone has to stay there for 20 hours a week, which is burdensome. That is one of the regulatory requirements, Your Honor, and the district court didn't really address that. No, but what's your response? Because Mr. Murray raised it again today. To the 20 hours a week thing? To the reasonableness of even assuming the administrative search exception applies here, why is it unreasonable? Why isn't it unreasonable to have that requirement of 20 hours a week? Well, Your Honor, I believe it's reasonable so that there is an opportunity for the FBI to inspect the records, and that would be our answer. Not a strong answer. But we strongly believe that since there haven't been any inspections since 2008 and since things have changed dramatically on the 2257 front. I thought you gave up that argument. Isn't that another variation on the same trust us argument we talked about in the facial attack part of this case? They could resume tomorrow. It's true, although I suppose it's something of a variation. But the evidence was that there was a program. I think the district court was satisfied that even though there were searches, that they were not intrusive, that people were given notice, that the FBI did not intrude where they weren't wanted, that records were segregated, they didn't look further than the actual records. And also it's certainly true that with the electronic means of doing things and that that was used in the past, that would certainly be a sensible way of inspecting records. But what you're saying is because they're not doing it the way the statute provides, and the regulations provide, you know, what they're doing is constitutional. So the fact that statute and regulations might set out something that violates the Constitution isn't a problem? I'm suggesting that even in the past, the regulations were not adhered to incredibly strictly. I think the answer to your problem is the extent that there's a... Well, then we should strike them down and let Congress and the agency to come up with something that fits better with, comports better with the practicalities. Wouldn't that be correct? I'm sorry, go ahead. Well, if that's what you want to conclude, I would just like to reiterate that it's the regulations rather than the statute. In fact, the regulation puts restrictions on the government that the statute basically does not. That's absolutely correct. And you've indicated that, in fact, even the regulation has not been strictly followed in the past, and I assume by that you were referring to the fact that, and I think the testimony showed that, there were numerous instances where agents provided notice that they were not required. Correct. And the instance where the producer was in Thailand and he was able to send his things by CD. And so I think the district court was impressed by the fact that this had been handled in an unintrusive and reasonable way. Yes, he did, obviously. Assuming we disagree with you on the administrative regulation exception, do we have, is there anything else available to us other than striking down those regulations? You could narrow them, Your Honor. For example, the biggest problem for the plaintiffs appears to be the requirement that they be there 20 hours a week. So if that seemed unreasonable to the court, perhaps it would be reasonable if it were not for that obligation. How would we do that, just analytically? Narrow 20 down to two? Well, you said there was... Take off 18? Put something in the suggestion box or just... Your Honor, I'm not sure I have a satisfactory answer to your question. I know, I don't either, which is why I put you on the spot. My time is up. I'm happy to answer any additional questions if you have them. I think we're good. Thank you. Thank you. I'd like to address two points. The Fourth Amendment point first. The statute says it is a felony for any person to refuse to permit the Attorney General or her designee to conduct an inspection under subsection C. I implore you, as I'm sure you will, read the testimony of the two agents. These were massive efforts. Premises were occupied sometimes for five and six hours. They took pictures of interiors. They were in conference rooms. They were in offices. They copied the records. These were searches in every sense of the word. But let me get back to the overbreath because I think that the government statement is based on a misunderstanding. We put on massive evidence of overbreath. This was a case, remember, the plaintiffs had a right to challenge facially the statute on overbreath grounds. We didn't just rely on hypotheticals. We put on evidence. We put on evidence, for example, take a look at Plaintiffs' Exhibit 37 and Plaintiffs' Exhibit 116. 116 is five volumes of adult social networking sites involving thousands of explicit photos and homemade videos posted by ordinary Americans. With the figures, 41 million adult FriendFinder members, millions of posts every single month on these many X-rated adult social networking sites. These are all images that trigger 2257. All these millions of Americans have to... from all that evidence that younger models were ubiquitous, that that's clearly an erroneous finding. I don't think he was talking about the social networking sites. He was talking about the commercial production. Remember, what I'm talking about now is the noncommercial depictions of sexual images by ordinary Americans, not for sale, not for trade. Because that's the overbreath that the government was attempting to address. Don't you have a problem with the third and fourth prong of the overbreath test, the nature of the activity or conduct sought to be regulated, which is here child pornography, which is just an activity that is regulated to the hilt, and the nature of the state interest underlying regulation, which is of the highest order? If these were child pornography images, yes, but we're talking about the application of this statute to millions of Americans. That's a matter of evidence, and I grant you that. But hasn't Judge Rendell's question really put out there what the contest is here? And that is what I think you would have to admit in every way has been articulated by the government of this country as being a public policy of enormous import, of profound import. So it is against that backdrop that you have to muster this evidence, and it becomes a question of whether or not that evidence is enough to overcome what weight and power that policy has in the whole equation. Well, here's my answer, Your Honor. When you think about it, what I'm talking about are the millions of ordinary Americans who post these images, share these images, not for sale, not for trade. They know how old they are. They know how old their husband is. They don't need to check their IDs in order to prevent themselves from posting images of themselves when they're not of age. This program has absolutely no efficacy when it's applied to noncommercial millions of Americans who don't need to check their IDs to know that they're over age. Well, that's as applied. That's the as applied challenge. No, that's the facial challenge, Your Honor, because that's, in other words, this goes to the category of private noncommercial expression, which was the second category that your prior opinion said would raise overbreath problems. Remember the government tried to say that the statute was limited to pornography for sale or trade. We engaged in extensive textual analysis with respect to the statute. Right. And so when you apply it to husbands and wives and ordinary Americans who post an image from their home of a constitutionally protected image because they're adults, because it's not child pornography, the statute is applying to constitutionally protected images when it comes to these adults, these millions of adults who are doing nothing wrong except that they are committing a felony if, in fact, they don't post the label and send the notice to the government of the 20 hours of leave. If they're doing it knowingly, correct? Knowingly. Well, actually, there's no CNR requirement in the first crime. The labeling. Yes. Well, on the labeling, yes, but it's unlawful to fail to create or maintain the records. There's no CNR requirement there. But they're doing it knowingly. It's not willfully in the sense that they know they're violating the law. Knowingly means they're knowingly posting a sexually explicit image. That's what millions of Americans are doing. They may be ignorant of 2257 because as important as the government claims it is, they aren't enforcing it. Nine prosecutions in a 10-year period. That's how important it is to the government. I see that my time is up. Thank you very much. Thank you very much. Case is well argued. Take it under advisement. Pass the clerk to recess court. Thank you.